D. M. MILLER v. LIFE INSURANCE COMPANY OF VIRGINIA.

*Contract— Usury—Intent of Lender—Indirect Profit in Excess of Legal Rate of Interest.*

1. If it is the intent or purpose of the lender of money to get more than the legal rate of interest for the loan, and if there be a provision, a condition or a contingency in or connected with the contract by which he may do so, the transaction is usurious.

2. If the usurious character of a transaction is not manifest upon its face, but depends on facts and circumstances connected with the transaction, as a part of *res gestae*, it is a question of fact as well as law, and should be submitted to the jury.

3. Where a life insurance company lent to a borrower a sum of money at the full legal rate of interest, payable monthly, its repayment being amply secured by mortgage on real estate, but required the borrower, in addition and as a condition of the lease, to take from and reassign to it an endowment policy for a sum equal to the amount of the loan, upon which the premiums should be paid monthly for seven years, (or until his death,) the payment of the premiums being also secured by the mortgage ; *Held,* that the transaction was usurious.

ACTION, begun for an accounting, and to enjoin and restrain defendant from selling the lands of plaintiff under deed of trust.

Temporary restraining order and order to show cause was granted by *Timberlake, J.,* and made returnable before *Hoke, J.,* at Salisbury, on February 17, 1896, being Monday of the Regular Term of Rowan Superior Court.

The following facts were agreed :

" 1. Plaintiff is resident of this State and defendant company is a Virginia corporation doing business in this State, and the contract was made in this State.

" 2. That on September 30, 1895, in said county and State, plaintiff made application to defendant company for a loan of twelve hundred dollars, said application being in writing, a copy of which is hereto attached as a part of this case agreed.

" 3. That on October 1, 1895, in pursuance of said application, said loan was made to plaintiff, and to secure repayment of the same plaintiff executed to defendant a mortgage or trust deed conveying certain lands to defendant with power of sale upon default—a copy of which trust deed is hereto attached as a part of this case agreed.

" 4. That on the said first day of October, 1895, plaintiff also executed to defendant his bond in the penal sum of $2,400, conditioned for the payment of said loan seven

years from its date, with interest from date during said period, at the rate of six per cent. per annum, payable monthly; and further conditioned for the payment of $15.12 monthly, during said period, as monthly premium on'' an endowment or policy, copies of which bond and endowment or policy are hereto attached as a part of this case agreed.

" 5. That said endowment or policy for $1,200 was issued to plaintiff by defendant in pursuance of said application and simultaneously with the granting of said loan, and was on the same day assigned in writing to defendant by plaintiff to secure the performance of said penal bond, and the assignment thereon is hereto attached as a part of this case agreed.

" 6. That prior to January 27, 1896, plaintiff paid to defendant certain sums of money on account of his said indebtedness, to-wit, the sum of twenty-one dollars and twelve cents, and on said date tendered to defendant the sum of $1,203 in gold coin in payment of his said indebtedness, and demanded the cancellation of said deed of trust and the surrender of said bond, which defendant refused, and thereafter advertised the land described in said deed of trust to be sold under foreclosure—a copy of said advertisement being hereto attached.

" 7. That thereafter plaintiff procured the temporary restraining order, &c., as above stated.

" 8. That plaintiff is still ready and willing to pay said sum of $1,203, as tendered, it being the amount of said loan, with interest thereon at the rate of six per cent. per annum, payable monthly, but is unwilling and refuses to pay the premiums due on said endowment or policy of $15.12 per month, claiming that said contract is usurious under the laws of this State, and that the whole contract

is a building and loan contract, and is not such a contract as comes within the scope or powers recognized in law as pertaining to life insurance-companies.

"9. That defendant is a life-insurance company, chartered for the purpose of carrying on the business of insuring lives, to cause themselves to be re-insured, to grant endowments, and to contract for reversionary payments.

"10. That at the time plaintiff applied for said loan of $1,200, defendant informed him that it used its money to increase its insurance business, and that it would make said loan if he would secure the same by trust deed upon good real estate, and would take out a policy in defendant's company for the sum of $1,200 and assign the same to defendant as additional security for said loan, and this plaintiff agreed to do, and did do.

"11. That said contract between plaintiff and defendant is not usurious, except and unless as appears upon the papers hereinbefore referred to as constituting the same, as it may be construed by the court."

"Plaintiff contends that on its face said contract is usurious, and that the defendant is only entitled to recover the principal of said loan, with interest at six per cent. per annum.

"Defendant contends that said endowment or insurance policy is a separate legal contract, based upon a valuable consideration, and that plaintiff was indebted to defendant on said 27th day of January, 1896, in addition to the interest on said loan, and the principle thereof as tendered, the sum of $30.24 premiums on said endowment policy; and defendant denies that said contract, or any part thereof, is usurious under the laws of this State. Defendant further contends that its contract with plaintiff is not a building and loan contract, nor such a contract as such companies issue, but one that life-insurance companies have a right to make, and one that belongs strictly to life-insurance.

MILLER *v.* LIFE INSURANCE COMPANY.

"On return day of preliminary injunction, the court was of opinion, and so held, that on ·the evidence and exhibits, the injunction should be continued till the final hearing—and it was so ordered."

"Thereupon, a jury trial being waived, in open court, the above statement was settled and agreed upon as the facts of the case upon which the rights of parties should be determined; and upon said facts, it was considered and adjudged by the court: 'That the contract, on its face, and without ulterior averments, is not usurious; that the injunction be, and the same is, hereby dissolved; and that defendant go without day and proceed to enforce and collect the amounts due, and according to methods set out and provided in contract; and that defendant have and recover of the plaintiff and sureties costs, to be taxed by the clerk.'"

From this judgment plaintiff appealed.

*Mr. T. F. Kluttz*, for plaintiff (appellant).
*Messrs. MacRae & Day* and *John A. Coke*, for defendant.

FURCHES, J.: The papers referred to in the case agreed and made a part of the case on appeal, show, in addition to the facts set forth in the agreed case, that the property conveyed in the deed of trust to Overman and McCubbins was a town lot worth about $1,000 without the improvements, and improvements on it worth about $1,500. And among the conditions are these requirements: That the plaintiff shall keep the buildings constantly insured in some good fire-insurance company to be approved by defendant, and for defendant's benefit, for at least the sum of $1,200, which policy is also to be assigned to defendant; that plaintiff pay the $1,200, when due, and that he also pay the interest on the note on the last of each month,

and that he pay the installments of $15.12 due on the life policy of $1,200 on the last of each month, *for seven years.* And if plaintiff shall fail in doing and performing any one of these conditions, it constitutes a breach, for which the trustees shall foreclose by sale; " and payment of said principal sum and all interest thereon, together with all monthly payments and fines on said endowment policy, and all costs and disbursements arising under this trust, including all taxes, assessments, insurance or other sums that may have been paid by said company as herein provided, may be enforced and recovered at once by sale foreclosure or otherwise, anything herein contained to the contrary notwithstanding "

" It is further stipulated and agreed that all the conditions of the said endowment policy are made part of this deed, as covenants of the parties of the first part."

It is admitted that it is lawful to loan money in this State at six per cent. and no matter what amount of security is required, if it is only for the purpose of securing the repayment of the principal and six per cent. interest thereon.    It is also admitted that it is lawful to issue life-insurance policies, such as that issued in this case: and defendant contends that it is impossible to take two transactions that are lawful within themselves and make an unlawful transaction out of them, when combined into one transaction.

This fairly presents the question before us, and is a strong presentation of defendant's side of the case.    But when it comes to be tested by the weight of authority, and we think by the reason of the thing, it cannot stand the test.    It is perfectly lawful, as admitted by all, to loan money at 6 per cent. and to require any security for its repayment, with this lawful interest.    It is entirely lawful for A to secure by mortgage the insolvent note of B as a

separate and distinct transaction. But if A applies to C for the loan of $1,000, and C agrees to lend the money to A if he will include in the note to him the insolvent note of B and A agrees to this, and secures the insolvent note, the note thus made, including the money loaned and the insolvent note of B, is held to be usurious. *Shober* v. *Hauser*, 4 D. & B., 91 ; *McKesson* v. *McDowell*, 4 D. & B., 120. The true rule is whether there was an intent—a purpose, on the part of the lender to get more than the lawful rate of interest, by the transaction. If there was, and by means of the transaction he may do so, the law pronounces it an unlawful and corrupt contract, and usurious. But if this is not manifest from the transaction, but depends upon facts and circumstances connected with the transaction, as a part of the *res gestæ*, it then becomes a question of fact as well as of law, and must be submitted to the jury. In the case of *Shober* v. *Hauser*, *supra*, where it was doubtful whether the note of B was not collectible at the date of the loan, and other circumstances therein mentioned, which if found as plaintiff contended, would have rebutted the allegation that there was a usurious purpose on C.'s part, in requiring that B.'s note should be included, it was held to be a case for the jury. And so was the case of *McKesson* v. *McDowell*, *supra*. The Court held that the question as to whether the small discount made was truly in consideration of the services of the assignee, as stated and contended by plaintiff, or whether that was a cloak and a device to cover the real transaction and to get more than lawful interest on the money, were questi ns of fact, and should have been submitted to the jury with proper instructions.

But these cases hold the true rule to be this : Was it the purpose of the lender to get more than the lawful rate of interest, and was there any contingency by which he might

do so? If there was the transaction is usurious, whether it is so apparent that it becomes the duty of the court so to declare, or whether it is a case in which it is necessary that the jury should find the facts. These cases seem to decide the principle upon which the doctrine of usury rests. That, if it is the purpose of the lender to get more than the lawful rate of interest for loan of money, and if there be a provision, a condition, a contingency, in or connected with the contract by which he may do so, it is usurious.

We intend to be governed by the rule, as we understand it to be laid down by this Court in *Shober* v. *Hauser* and *McKesson* v. *McDowell, supra.* In our investigation we find much authority sustaining this rule and applying these principles to the case before us.

" Where, as a condition of making a loan, the borrower is required to take policies of life insurance from the lender and pay premiums thereon, in addition to the highest legal rate of interest on the amount loaned, it is generally held that the profit thus derived by the lender is equivalent to additional interest and therefore usurious." 27 A. & E. E., Sec. 29, page 1021, and note 1.

" All agreements, which in legal effect give to the lender of money any profit or advantage, certain or contingent, more than at the rate of seven (here six) per cent. interest, violate the statute. It is not necessary to allege or prove *aliunde* any peculiar *intent* or special corruption in such a case. It is usury upon its face and the Court must so declare as a matter of law. It is only when the true character of the transaction is equivocal,............a device for usury, that the question becomes one of fact and belongs to the jury." *Thomas* v. *Murry*, 34 Barber, 171.

Where the lender takes the chance for more than legal interest " this contingent · benefit beyond the legal rate

of interest, and where the lender has the right to demand the repayment of the principal sum with the legal interest thereon, in any event, the contract is in violation of the statute prohibiting usury." *Brown* v. *Vurdenburg*, 34 N. Y., 197.

"A stipulation even for a *chance* of advantage beyond legal interest, is illegal and courts will not lend their aid to enforce an unlawful contract." *Butterick* v. *Harris*, 1 Biss., 443.

"The two transactions were combined into one—the loan would not have been made but for the insurance—six per cent., the full limit of interest was charged for the money. But the loan depended upon the borrower's taking the policy of insurance. The policy was a thing of value to the plaintiff (here defendant) or it would not have required it to be taken as a condition precedent to the loan, and is usurious." *Insurance Co.* v. *Kittle*, 2 Fed. Rep., 116.

In our investigation of this important question, we believe we may say, that we have found no case or other authority that does not sustain the principle, announced by this Court, that a usurious transaction is one in which it is intentionally provided that a party may take more than the lawful rate of interest for the loan of money. But we have found cases that differ as to the application of this principle; we have found a few cases which hold that it does not *per se* make a transaction usurious for a Life Insurance Company to require a party wishing to borrow money to take out a policy of insurance as a condition precedent to the loan. *Insurance Co.* v. *Manufacturing Co.*, 25 N. J. Eq., 160; *Insurance Co.* v. *Crane*, 25 N. J. Eq., 418. But none of them dispute the principle here laid down or decide that it would not be usurious if so intended, and the great weight of authorities is to the effect that it is usurious *per se*.

Having ascertained the principle upon which our judgment should be founded, it yet remains to make the application to the facts of this case—a thing, in many cases, more difficult to do than to find and define the principle of law that should govern the case. If we take the cases cited from 34 Barbour, 43 N. Y., 2 Fed. Reporter, and add to these that of the 27 A. & Eng. Enc. of Law, as authority, the question would seem to be settled and it would only remain for us to declare the transaction usurious. But as there is some diversity of authority as to the application of this admitted principle, it seems proper that we should, to some extent, examine the question of applying the facts of this case. We cannot conceive of a case where the money loaned by the defendant to the plaintiff Miller, could have been better secured than it was, without the assignment of the insurance policy.

The defendant had a deed in trust, made to its own selected trustees, on real estate worth twenty-five hundred dollars, with the improvements, and one thousand dollars, without any improvements, with a condition in the trust deed that the plaintiff at all times should keep the buildings on this lot insured to the amount of $1,200 in a good fire-insurance company, to be selected or approved by defendant, and this policy should also be assigned to the defendant; that the plaintiff should pay all taxes, fines and assessments that should be levied, assessed or placed upon said property and a failure on the part of plaintiff to keep and perform any of these conditions or requirements should, amount to a breach and the trustees should proceed at once to sell and apply the money. This being so there can be no claim or pretense, but that the money loaned, ($1,200) was abundantly secured. But this was not all the conditions this remarkable deed contained. It is.

further provided, as additional conditions, that plaintiff shall assign to the defendant the $1,200 life-insurance policy he had been compelled to take out, and the payment of $15.12 to the defendant each month on this policy is secured to defendant, as one of the conditions in this deed of trust, for the term of *seven* years. And it was stated and admitted on the argument that plaintiff did not wish to take out this policy and would not have done so but for its enabling him to borrow the money. And it is proper to state that it was stated by counsel of defendant and admitted by counsel of plaintiff that the premiums charged on this policy were the usual charges on such policies.

Then, when the $1,200 loaned to plaintiff was amply and abundantly secured, and every dollar to be repaid with lawful interest, the payment of which did not, and does not, depend upon the insurance policy, why was it that defendant made the insurance a condition precedent upon which it would loan the money?

It was admitted on the argument that if the plaintiff Miller should live out the seven years, the defendant would make seventy dollars by the insurance. And if we adopt the rule laid down in the cases cited to sustain plaintiff's contention that a contingent benefit over and above lawful interest taints the transaction with usury, this admission is sufficient to decide the case. But it does not seem to us that this admission reaches the truth of this transaction, as defendant has a bond that falls due seven years after date, and an insurance policy due in seven years, upon which $15.12 falls due every month and the payment of this interest and this $15.12 per month is secured by a deed of trust. It is not clear whether this interest and these premiums end at the death of Miller or not. But suppose they do, and we do not put our judg-

ment upon this speculation as to whether they end at Miller's death or not—as it is not clear to us how this is. But taking it that it does, it is then clear to our minds that the admissions as to the profits made by the defendant do not reach the truth. It is true that if we take seven years and divide them into months we have eighty-four months, and $15.12 per month makes $1,270. But in this calculation there is no notice taken of the fact that defendant has no money invested in the policy of insurance, nothing but the risk of Miller's dying, and that Miller has been paying into its treasury $15.12 every month from the date of the policy to the end of the seven years. If the interest is calculated on these premiums from the date of their payment to the end of the seven years at six per cent., with the $70 added, it will be found that defendant has made out of the insurance about $300 and the plaintiff has lost this amount, supposing he gets $1,200 at the end of the seven years. We say *supposing* he gets back $1,200 at the end of the seven years, for he is the creditor in that part of the contract and, like all creditors, takes the risk of getting his money back—be this risk much or little.

But the question of usury does not depend upon the question whether the lender actually gets more than the legal rate of interest or not. If this were so it could never be determined whether there was usury or not until the money was paid back. This would be like locking the stable after the horse was stolen. But it depends upon whether there was a purpose in the mind of the lender to make more than legal interest for the use of money, and whether, by the terms of the transaction and the means used to effect the loan, he *may* by its enforcement be enabled to get more than the legal rate. If so the transaction is usurious.

In this case the proposition of plaintiff was to borrow $1,200 upon abundant security. This proposition was rejected unless the plaintiff would take out a policy of life-insurance in defendant company, by which the company has the *chance* to make $300 in addition to the legal rate of interest on the $1,200 loaned, and the question is is this transaction usurious. Applying the principles laid down by this Court in the cases cited and the principles of decided cases in other courts and the application of the principle there made, as well as that of the American & English Encyclopedia of Law, the transaction is usurious; and this is sufficiently apparent by its terms and conditions to make it our duty so to declare.

There is error and the judgment appealed from is reversed.

Reversed.

FAIRCLOTH, C. J., and AVERY, J., dissent.