STATE EX REL. ORNSTINE, Plaintiff in error, vs. CARY, Defendant in error.

*October 24—November 14, 1905.*

*Usury: Taking of excessive commissions, etc.: Punishment: Constitutional law: Police power.*

Ch. 278, Laws of 1905 (which, in addition to providing for recovery of treble the amount of usurious interest taken, makes it a misdemeanor punishable by fine or imprisonment or both for any person to ask or receive more than ten per cent. per annum upon money loaned upon chattel security or secured by assignment of wages, or to ask or receive more than fourteen per cent. per annum in full for all examinations, views, fees, appraisals, commissions, renewals, and charges of every kind), is a reasonable and valid exercise of the police power and does not infringe upon the rights of personal freedom or liberty of contract guaranteed by the federal or state constitution.

ERROR to review an order of the circuit court for Milwaukee county: LAWRENCE W. HALSEY, Circuit Judge. *Affirmed.*

On the 8th day of June, 1905, plaintiff in error loaned one William Brouch and wife $100, payable in thirty days. Brouch and his wife gave their promissory note for $103, and to secure its payment executed a chattel mortgage upon their household furniture, a horse, and two wagons. On June 19, 1905, they paid the note, and received a receipt for $100 principal, $1 interest, and $2 for commissions and examinations. On June 30, 1905, on the complaint of Brouch under ch. 278, Laws of 1905, plaintiff in error was arrested charged with taking usurious interest on a chattel-mortgage loan. While detained by the sheriff awaiting trial he petitioned the circuit court for Milwaukee county for a writ of *habeas corpus,* alleging that his arrest and detention were unlawful, in that the law under which he was deprived of his liberty was unconstitutional. The writ was issued, the prisoner produced,

and the sheriff in his return to the writ pleaded the note, the chattel mortgage, the complaint, and the warrant, and alleged justification for the arrest upon these proceedings under ch. 278, Laws of 1905. The plaintiff in error admitted the facts, but averred that the arrest and detention were unlawful because of the unconstitutionality of the law. Upon the hear-. ing the court upheld the constitutionality of the law and remanded the plaintiff in error to the custody of the sheriff. Plaintiff in error sued out this writ of error to the order of the circuit court remanding him to the custody of the sheriff.

*E. M. McVicker,* for the plaintiff in error, contended, *inter alia,* that the statute in question is unconstitutional in that it unlawfully deprives the citizen of his property and his liberty without due process of law, and in that it arbitrarily prohibits by criminal penalty the contracting in relation to his own property and his own services in matters wherein such prohibition is not justified by public necessity or the general welfare of the community. *State v. Goodwill,* 33 W. Va. 179; *Braceville C. Co. v. People,* 147 Ill. 66; *Ritchie v. People,* 155 Ill. 98; *Gillespie v. People,* 188 Ill. 176; *Mugler v. Kansas,* 123 U. S. 623, 661; *Lawton v. Steele,* 152 U. S. 133; *People ex rel. Manhattan Sav. Inst. v. Otis,* 90 N. Y. 48; *State v. Scougal,* 3 S. Dak. 55, 51 N. W. 858; *Godcharles v. Wigeman,* 113 Pa. St. 431; 1 Kent, Comm. 450; *In re Aubry,* 36 Wash. 308, 78 Pac. 900; *Bessette v. People,* 193 Ill. 334; *Gundling v. Chicago,* 177 U. S. 183, 188; *Lochner v. New York,* 198 U. S. 45, 25 Sup. Ct. 539; *State ex rel. Smith v. Board of Dental Examiners,* 31 Wash. 492, 72 Pac. 110; *People v. Beattie,* 89 N. Y. Supp. 193; *Yick Wo v. Hopkins,* 118 U. S. 356, 6 Sup. Ct. 1064; *Slaughter-House Cases,* 16 Wall. 36; *Butchers' Union S. H. & L. S. L. Co. v. Crescent City L. S. L. & S. H. Co.* 111 U. S. 746. A number of interesting cases have lately arisen in regard to the constitutionality of statutes prohibiting the use of trading stamps, and the courts are uniform in holding against the

validity of such statutes. *State v. Dodge,* 76 Vt. 197, 56 Atl. 983; *Comm. v. Sisson,* 178 Mass. 578; *State v. Shugart,* 138 Ala. 86; *Winston v. Beeson,* 135 N. C. 271, 47 S. E. 457; *Ex parte McKenna,* 126 Cal. 429. See, also, *Young v. Comm.* 101 Va. 853, reported and commented upon in 2 Mich. Law Rev. 224, where a number of cases in point are cited.

For the defendant in error the cause was submitted on the brief of the *Attorney General.* He argued, among other things, that many other states have made the taking of usury a criminal offense. For decisions under such statutes, see *Merriman v. State,* 6 Blackf. 449; *Crawford v. State,* 2 Ind. 112; *State v. Williams,* 4 Ind. 234; *Marble v. State,* 13 Ind. 362; *Swinney v. State,* 14 Ind. 315; *Block v. State,* 14 Ind. 425; *Comm. v. Frost,* 5 Mass. 53; *Comm. v. Morris,* 176 Mass. 19; *State v. Tappan,* 15 N. H. 91; *Henry v. Bank of Salina,* 5 Hill, 523; *Sumner v. People,* 29 N. Y. 337; *State v. Security Bank,* 2 S. Dak. 538; *State v. Mitchell,* 2 Cold. 222; *Murphy v. State,* 3 Head, 249; *M'Auly v. State,* 7 Yerg. 526; *Graham v. State,* 5 Humph. 40; *Gillespie v. State,* 6 Humph. 164; *State v. First Nat. Bank,* 2 S. Dak. 568, 51 N. W. 587; *McBroom v. Scottish M. & L. Inv. Co.* 153 U. S. 318.

SIEBECKER, J. The offense with which plaintiff in error is charged is created and defined by sec. 1691, Stats. 1898, as amended by ch. 278, Laws of 1905. The complaint charges that he violated the provisions of this law, in that he demanded and received more than ten per centum per annum for the forbearance or use of the sum of money actually loaned and secured by chattel mortgage, and that he charged and received for commissions in the transacting of the business connected with such loan more than an amount equal to fourteen per centum. The facts alleged are not in controversy on this appeal.

It is claimed that the proceedings are void upon the ground
that the provisions of the law involved are an infringement
of the rights of personal freedom and the liberty of contract
guaranteed by the provisions of the federal and state con-
stitutions. The right of the legislature to prescribe a maxi-
mum rate of interest for the forbearance, use, or loan of
money, and to attach penalties for the violation of such pro-
visions, has been recognized and exercised by governments
from the time the relation of borrower and lender developed
in the affairs of life. Whatever policy may have been favored
at different times as to such legislation, the fact is clear that
this power has been generally exercised whenever the ex-
igencies of public justice have demanded that a limit be set
to the amount to be demanded and received for the forbear-
ance, use, or loan of money, goods, or things in action. Ad-
judications evidencing the enforcement of such laws in the
different states are so common and numerous that citation of
them is entirely unnecessary. This power has been exercised
for the protection of the borrower, upon the ground "that the·
lender and the borrower . . . do not occupy the same re-
lations of equality that parties do in contracting with each·
other in regard to the loan and sale of other kinds of property,
and that the borrower's necessities deprive him of freedom in·
contracting, and place him at the mercy of the lender." Pren-
tice, Police Powers, 43. It is upon this theory that the state·
is deemed to have enacted usury laws in the exercise of the·
police power in protection of the public interest and for the·
promotion of the general welfare.

Legislation of this character has been on the statute books·
of this state from its early days, and has repeatedly been en-
forced in judicial proceedings, some of which have reached·
this court. Of these we may mention *Lee v. Peckham,* 17·
Wis. 383; *McArthur v. Schenck,* 31 Wis. 673; *Cooper v. Tap-
pan,* 9 Wis. 361; and *First Nat. Bank v. Plankinton,* 27·

Wis. 177. The exercise of this legislative power being approved and sanctioned, it necessarily follows that the legislature is vested with the power to legislate against the injurious consequences that inhere in the conduct of such business, and possesses discretion to determine what means are necessary to the accomplishment of this end, and its action is valid, unless it has exceeded its authority by imposing such arbitrary restrictions upon the individual and his business or occupation as are palpably foreign to the legitimate purposes sought to be accomplished by the legislation. *Mugler v. Kansas,* 123 U. S. 623, 8 Sup. Ct. 273; *Lawton v. Steele,* 152 U. S. 133, 14 Sup. Ct. 499; *State ex rel. Zillmer v. Kreutzberg,* 114 Wis. 530, 90 N. W. 1098. The provisions of the law limiting the amount to be demanded and received for the forbearance, use, or loan of money, goods, or things in action are obviously germane, and relate to the injurious consequences resulting from an unrestricted conduct of such business. The claim that the provisions are an unwarranted invasion of the right to contract is not well founded. The power of the legislature to regulate a business for the protection of the public carries with it the power to control and regulate the right to contract in relation to it. This power was recognized in the case of *Frisbie v. U. S.* 157 U. S. 160, 15 Sup. Ct. 586, which deals with the constitutionality of the act of Congress limiting the compensation of an agent, attorney, or other person in prosecuting a claim for a pension under such an act of Congress. The court says:

"While it may be conceded that, generally speaking, among the inalienable rights of the citizen is that of the liberty of contract, yet such liberty is not absolute and universal. It is within the undoubted power of government to restrain some individuals from all contracts, as well as all individuals from some contracts. It may deny to all the right to contract for the purchase or sale of lottery tickets; to the minor the right to assume any obligations except for the necessaries of existence;

to the common carrier the power to make any contract releasing himself from negligence, and, indeed, may restrain all engaged in any employment from any contract in the course of that employment which is against public policy. The possession of this power by government in no manner conflicts with the proposition that, generally speaking, every citizen has a right freely to contract for the price of his labor, services, or property."

Contracts made in connection with the transaction of loaning money, under a scheme whereby the lender or his authorized agent receives payments of money or its equivalent in excess of the legal rate of interest, have been held to be prohibited by the law and not enforcible as valid obligations. *McFarland v. Carr,* 16 Wis. 259; *Ottillie v. Wœchler,* 33 Wis. 252; *Payne v. Newcomb,* 100 Ill. 611; *Dunham v. Gould,* 16 Johns. 367; *Clague v. Creditors,* 2 La. 114; *Miller v. Life Ins. Co.* 118 N. C. 612, 24 S. E. 484. The most common devices to accomplish such purposes were by means of charges against the borrower in the form of commissions, fees for appraisals, views, examinations, and renewals in connection with the loan. The making of such contracts and insuring performance by pledge of personal property so readily and generally results in inflicting injuries on the borrower through unreasonable exactions that they are held as injurious to the community and as much against public policy as the unreasonable charges of interest. This injurious consequence affords a sufficient ground for the regulation by law, and is as proper for the protection of the borrower as a limitation on the rate of interest. We are of opinion that legislation restricting the infliction of such oppressive and unjust exactions is justifiable as a reasonable and appropriate exercise of the police power. The provisions of the act in question clearly indicate that it was the purpose and design of the legislature to prevent such wrongs by limiting the amounts to be charged as interest and by restricting the amount of charges any person could receive for examinations, views, fees, appraisals,

commissions, renewals, and charges in procuring, making, and transacting the business connected with such loans.

It is contended that the legislature exceeded its power in declaring violations of the statute to be a criminal offense to be punished by imprisonment. The power of the legislature to inflict some penalty for the violation of such laws is not questioned, but it is claimed that the penalties provided and enforcible by civil actions are all that are required to give reasonable, appropriate, and necessary sanction and efficacy to such a statute. While the police power cannot be put forward as an excuse for oppressive legislation, yet, when properly resorted to for preserving the public interest and the protection of private rights, "a large discretion is necessarily vested in the legislature to determine, not only what the interests of the public require, but what measures are necessary for the protection of such interests." *Lawton v. Steele,. supra.* As stated by Mr. Cooley in his Constitutional Limitations (7th ed.) 890:

"Whether the prohibited act or omission shall be made a criminal offense, punishable under the general laws, or subject to punishment under municipal by-laws, or, on the other hand, the party be deprived of all remedy for any right which, but for the regulation, he might have had against other persons, are questions which the legislature must decide."

See, also, *Holden v. Hardy,* 169 U. S. 366, 18 Sup. Ct. 383; *State v. Holden,* 14 Utah, 71, 46 Pac. 756; *Frisbie v. U. S., supra; Comm. v. Morris,* 176 Mass. 19, 56 N. E. 896; *Baker v. State,* 54 Wis. 368, 12 N. W. 12.

We are unable to perceive anything in the nature of the penalties prescribed for a violation of the statute inconsistent with the constitutional guaranties of liberty. It was clearly within the legislative power to adopt such sanction for the law as it might deem reasonably necessary and appropriate to accomplish its purpose. There is nothing in the punishment inflicted either unreasonably excessive or arbitrary in

its nature, nor is it unlike punishments usually inflicted upon persons whose transgressions of the law's commands evince a like degree of turpitude.

*By the Court.*—The order appealed from is affirmed.