JOHN T. RODGE *v.* ROBERT M. KELLY, TAX COLLECTOR, ET AL.

[40 South. Rep., 552.]

CONSTITUTIONAL LAW. *Due process of law. Class legislation. Constitution of United States, Am. XIV. Constitution 1890, sec. 14. Privilege tax. Money lenders.*

A legislative act, as well a city ordinance, purporting to impose a privilege tax on each person doing a money lending business, securing loans by bill of sale or mortgage on designated kinds of personal property, such tax not being imposed on lenders otherwise securing their loans, is class legislation and void, being violative of:

(a) State Constitution 1890, sec. 14, providing that a person shall not be deprived of life, liberty, or property without due process of law; and

(b) United States Constitution, Amendment XIV, sec. 1, providing that a state shall not deprive any person of life, liberty, or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws.

FROM the circuit court of Warren county.

HON. OLIVER W. CATCHINGS, Judge.

Rodge, the appellant, was plaintiff in the court below; Kelly, tax collector, and others, the appellees, were defendants there.

From a judgment in defendants' favor the plaintiff appealed to the supreme court. The facts are sufficiently stated in the opinion of the court.

*Anderson & Voller,* for appellant.

1. The statute and the city ordinance are in conflict with that part of section 1 of the fourteenth amendment to the constitution of the United States, which says:

"Neither shall any state deprive any person of life, liberty or property without due process of law; nor deny to any person within its jurisdiction the equal protection of the law."

That this is true (a) as to the money lender embraced in these acts; and (b) as to the borrower who borrows money on the securities denounced by said acts.

2. They are in conflict with sec. 112 of our state constitution, which says: "Taxes shall be uniform and equal throughout the state."

3. They are in conflict with that part of sec. 1 of the fourteenth amendment to the constitution of the United States, and sec. 14 of the state constitution, which says that "no person shall be deprived of life, liberty or property except by due process of law," in that both the statute and the ordinance purport on their face to be for the levying and collection of a license tax, but in reality they are clearly and palpably an attempt to destroy and prohibit a legitimate business.

We call the court's attention to the fact that there is no privilege tax either by statute or by ordinance required of money lenders as a class, but the attempt here is to segregate from the class of persons who follow the legitimate and laudable business of lending money, that species of money lenders or those members of the money lending class who loan their money on certain kinds of personal securities, viz.: "Household and kitchen furniture, wearing apparel, pianos, sewing machines, jewelry, silver, glass, plate or ware." In other words, money lenders as a class are

exempt from paying any privilege tax for the carrying on of their business, but certain members only of that class, those that lend on the securities mentioned in the statute and ordinance, are selected by the legislature and the city authorities of the city of Vicksburg to pay this tax.

In *Gulf, Colorado & Santa Fe Railway* v. *Ellis,* 165 U. S., 150, the whole subject of classification by the states and its various aspects was reviewed by Mr. Justice BREWER, who said:

"Yet it is equally true that such classification cannot be made arbitrarily. The state . . . may not say that all men beyond a certain age shall be alone thus subjected, or all men possessed of a certain wealth. These are distinctions which do not furnish any proper basis for the attempted classification. They must always rest upon some difference which bears a reasonable and just relation to the act in respect to which the classification is proposed, and can never be made arbitrarily and without any such basis. . . . But arbitrary selection can never be justified by calling it classification. The equal protection demanded by the fourteenth amendment forbids this."

So Mr. Justice BLACK, in *The State* v. *Loomis,* 115 Mo., 307, says:

"Classification for legislative purposes must have some reasonable basis upon which to stand. It must be evident that differences which would serve for a classification for some purposes furnish no reason whatever for classification for legislative purposes. The differences which will support class legislation must be such as in the nature of things furnish a reasonable basis for separate laws and regulations."

The same principle was announced by the Federal District Judge, SWAYNE, *in re Grice,* 79 Fed. Rep., 627, in one of the strongest opinions we have ever read, wherein the anti-trust law of Texas was declared unconstitutional on account of sec. 13 of that act, which reads as follows:

"The provision of this act shall not apply to agricultural

products or live stock while in the hands of the producer or raiser."

It is true that this is not the decision of a court of last resort, but it commends itself to the intelligence of any court as being sound and conclusive.    However, the supreme court of the United States, in the case of *Connelly* v. *Unian Sewer Pipe Co.,* in an opinion delivered by Mr. Justice HARLAN, *184 U. S.,* 540, declares the anti-trust law of the state of Illinois unconstitutional for having exactly the same exemption as is found in the Texas law.    Sec. 9 of the Illinois statute reads as follows:

"The provision of this act shall not apply to agricultural products or live stock while in the hands of the producer or raiser."

. Both of these last decisions declare that the classification of those acts is unreasonable, and therefore in conflict with the last clause of sec. 1 of the fourteenth amendment to the federal constitution.

Another authority puts it thus:

"A reasonable classification of the various forms of business for taxation or license is not forbidden by that part of the fourteenth amendment to the federal constitution, which provides that no state shall deny to any person within its jurisdiction the equal protection of the laws; and an occupation tax or license which is imposed upon all of the same class, without discrimination, is valid. But unreasonable classification or discrimination between members of the same class renders the statute void under this provision of the constitution."    21 Am. & Eng. Ency. Law (2d ed.), 800.

*In re Yot Sang,* 75 Fed. Rep., 983, was a case in which the legislature of Montana passed a statute imposing a license tax of twenty-five dollars per quarter upon every laundry business, other than that of a steam laundry, wherein more than one person is employed or engaged, and of fifteen dollars per quarter on steam laundries.

The federal district judge held that the statute was void because it imposed a greater burden upon one kind of laundry business than upon the other, and thereby denies the equal protection of the laws, contrary to the fourteenth amendment of the constitution.

Outside and independent of the authorities sustaining our contention upon this subject, and we could cite a great many more, we submit that there can be no reason that is conceivable why such a discrimination should be made by the law-making power or upheld by the courts.

3. The statute and ordinance are also void because they are clearly intended to be prohibitory, and are therefore in conflict with those provisions, both of the fourteenth amendment and of our state constitution, sec. 14, which say that no person shall be deprived of life, liberty or property without due process of law. There is no principle of law more firmly settled than that a purely revenue statute must not be unreasonable or prohibitory in its effect.

It will be observed that both the statute and the ordinance are parts of the chapters taxing privileges; that that is all they purport to be, and that by no stretch of reason or construction can they be held to be anything else.   That there is no effort on the part of the law-making power to regulate the business of money lending in any particular, but the amount demanded is purely and simply for the purpose of helping pay the governmental expenses of the state and the city.   This being true, the tax must not be unreasonable or prohibitory, but on the other hand it must be reasonable and not oppressive, partial or in restraint of trade. *Ex parte Frank* (Calif.), 28 Am. St. Rep., 642; *Bloomington* v. *Wahl,* 46 Ill., 489; *State* v. *Bean,* 91 N. C., 554.

Nor can the statute and ordinance be upheld on the ground that it is a police measure.   For even if it should be conceded that the business falls properly under the police power of the state and city (which we most emphatically deny), still, if it was

intended as a revenue measure, then it must be confined to that, and cannot be said therefore, to be a regulation under the police power. This is the settled law of this state. *Jackson* v. *Newman,* 59 Miss., 385; *Pitts* v. *Vicksburg,* 72 Miss., 181 (s.o., 16 South. Rep., 418); *The State* v. *Moore* (N. C.), 22 L. R. A., 472.

*Dabney & McCabe,* for appellees.

There has grown up in Mississippi a business, the methods and operations of which are so grossly unconscionable and wrong that it is a shame and disgrace to the state. Unscrupulous men, imposing on the ignorance and confiding simplicity of the negroes, have established loan agencies, as they are called, in the different towns, where they lend out money on bills of sale or other encumbrances on household furniture, sewing machines, etc., collecting from twenty-five to fifty per cent a week on these loans. The victims of these sharks are laboring people or houseservants, and a large part of their wages is consumed every month in paying these exorbitant rates of interest, for the purpose of saving their household effects, their sole and only possession.

That the business sought to be regulated by this provision of the law is an evil, and one which falls within the police power of the state, is sufficiently shown by the opinion of this court in the case of *Woodson* v. *Hopkins,* 85 Miss., 171 (s.o., 37 South. Rep., 1000), and we especially call the attention of the court to the language used in the opinion in answer to the suggestion of error, where the court speaks of that class of contracts as "so unconscionable, so highly extortionate, as to shock the conscience upon the mere statement of them."

The statute should be upheld if it be possible to do so without doing violence to the constitution, and every presumption should be indulged in favor of its validity.

"Police power" is an indefinable power in the state. See 22 Am. & Eng. Ency. Law (2d ed.), 915; 8 Cyc., 863; *Capital City*

*Dairy* v. *Ohio,* 138 U. S., 238; *Smiley* v. *Kansas,* 196 U. S., 447; *Hodge* v. *Muscatine Co.,* 196 U. S., 276; *McCoy* v. *United States,* 195 U. S., 27.

WHITFIELD, C. J., delivered the opinion of the court.

This is a suit brought by John F. Rodge, appellant here, against Robert M. Kelly, assessor and tax collector of the city of Vicksburg, and the mayor and aldermen of the city of Vicksburg, to recover the sum of $250, paid by the said Rodge into the treasury of said city under protest; said amount being required of him by the said city tax collector as a privilege tax, under an ordinance of said city which is claimed by appellant to be unconstitutional and void. The history of said ordinance is as follows: The legislature, during its session of 1904, under "An act creating privilege taxes on certain industries in the state of Mississippi," passed the following statute:

"Section 1. *Be it enacted by the legislature of the state of Mississippi,* That a privilege tax is hereby created on the following industries of the state of Mississippi:

.    .    .    .    .    .    .    .    .    .    .    .    .

"Sec. 57. *Money lending.*—On each individual, firm or corporation doing a money lending business on personal securities, such as household and kitchen furniture, or wearing apparel, pianos, sewing machines, jewelry, silver, glass, plate or ware, whether such loan is secured to the lender by bill of sale of such personal property, or whether such loan is secured by mortgage or deed of trust, $500.00." Laws 1904, ch. 76, p. 71.

Thereupon, and in pursuance of this statute, on the 18th day of April, 1904, the city council of the city of Vicksburg passed the following ordinance, which was approved april 20, 1904, and which was to take effect from and after May 1, 1904, to wit:

"*Privilege tax ordinance.*—An ordinance imposing a privilege

tax on certain trades, business professions and callings, to provide revenue for the city of Vicksburg.

"(1) Article 11. On each individual, firm or corporation doing a money lending business on personal securities, such as household and kitchen furniture, wearing apparel, pianos, sewing machines, jewelry, glass, plate or ware, whether such loan is secured to the lender by a bill of sale of such personal property, or whether the loan is secured by mortgage or deed of trust, $250.00."

It will be observed that this ordinance is in the exact language of the statute, except as to the amount, which is $250, being fifty per centum of the state tax, the statutory (Code 1892, § 3412) maximum limit. The appellant, John F. Rodge, and others, at the time of the passage of said statute and ordinance, were engaged in the city of Vicksburg in the business of money lending on the securities denounced by said statute and ordinance, and were required by the respective tax collectors of Warren county and the city of Vicksburg to pay said privilege tax of $500 and $250. These taxes were paid under protest, on the announcement and claim that said statute and ordinance are unconstitutional and void; and suits have been brought against these officers to recover back said amounts. The declaration in the case at bar, as will be seen by inspection, set out this statute and ordinance, alleges that plaintiff is a money lender dealing in the securities denounced by said acts; that no others of the class of money lenders are required by said statute and ordinance to pay any privilege tax, and that the said acts amount to class legislation, and are therefore unconstitutional and void. To this declaration a demurrer was interposed, calling in question the legality of plaintiff's contention, which was sustained by the lower court, and from this decision plaintiff appeals.

Appellant's contention is that this statute and ordinance are

void because (1) they are in conflict with that part of section 1 of the fourteenth amendment to the constitution of the United States, which says: "Neither shall any-state deprive any person of life, liberty or property without due process of law; nor to deny to any person within its jurisdiction the equal protection of the law." Appellant says that this is true (a) as to the money lender embraced in these acts; and (b) as to the borrower who borrows money on the securities denounced by said acts. (2) They are in conflict with that part of section 1 of the fourteenth amendment to the constitution of the United States, and sec. 14 of the state constitution, which say: "No person shall be deprived of life, liberty or property except by due process of law," in that both the statute and the ordinance purport on their face to be for the levying and collection of a license tax, but in reality they are clearly and palpably an attempt to destroy and prohibit a legitimate business.

The purpose of this act seems to have been to provide this high license in the case of the money-lending sharks well known in some of the cities of this state, who are in the habit of lending small sums of money at most iniquitous and exorbitant rates to servants in families and other necessitous persons, and securing from such persons bills of sale of household and kitchen furniture, plate, ware, etc., which articles are at the time of such loan in the actual personal use of such persons so securing such loan. The purpose of preventing this infamous system of robbery under the guise of money lending, which sought to subject to quick sale, within a week's time often, the articles which constitute, in such actual personal use of those securing the loan, the necessities of decent existence, is a justly righteous purpose. Money-lending concerns, so called, which would sell the piano on which the daughter is learning music, the small and plain jewelry upon the person, the sewing machine on which are made the clothing worn in humble households, and the plain plate and glass in customary use amongst the humble and needy, in the

enforcement of contracts of loans at such rates of interest as were referred to and condemned in *Woodson* v. *Hopkins,* 85 Miss., 171 (37 South. Rep., 1000; 38 South. Rep., 298; 70 L. R. A., 645), as making such contracts void as against public policy, are engaged in transactions simply and utterly infamous and which cannot be enforced in any court.    But the trouble with this statute, as drawn, is that it prohibits loans on personal securities of the kind named, without reference to any rate of interest.    If only the securities be of the kind named in this statute, no loan could be made, except upon payment of this high license, not exacted of any other money lender, at even six per cent, or five per cent, or any per cent whatever.    Again, under this statute, money lenders on personal securities of this kind would have to pay this high license in order to loan at any rate of interest, however low, on jewelry worth $100,000 in a store, or silverware worth $100,000 in a store, or on all the pianos in a factory.    As written, the statute is unfortunately class legislation, falling within the inhibition of the constitutional provisions named.

It may well be that no statute is needed to prohibit the kind of contracts condemned in *Woodson* v. *Hopkins, supra,* since the contracts condemned in that case were not contracts condemned because of usury, but contracts condemned, as clearly stated in that opinion, because they were so grossly exorbitant and iniquitous in all their features as to be void as against public policy. There is no need of a statute to prohibit contracts and businesses which the courts have declared void as against public policy.    If, however, it was the purpose of the legislature to withdraw such contracts from the condemnation of being against public policy upon the condition of the payment by persons and corporations engaged in them of a very high license, it would still remain true that the statute enacted in that view must conform to the provisions of the constitution of this state and the United States referred to.

*The judgment is reversed, the demurrer overruled, and the cause remanded.*