# STATE v. SHERMAN.
## (No. 608.)

USURY — STATUTES PREVENTING — POLICE POWER—CONSTITUTIONAL LAW—FOURTEENTH AMENDMENT, U. S. CONSTITUTION—LOCAL AND SPECIAL LAWS—CLASSIFICATION—REASONABLENESS—UNIFORMITY— CRIMINAL PENALTY FOR USURY—SMALL LOANS—EXTORTIONATE INTEREST—STATUTES TO PREVENT—VALIDITY.

1. The act of 1909 (Chap. 135, Laws 1909) to prevent extortion in relation to small loans, making such extortion a misdemeanor, and providing penalties therefor, like all statutes for the prevention of usury, was enacted as a police regulation.

2. Under the police power of the State, regulations are prescribed for the protection of the public health, public safety, and public morals, or, generally, the public welfare; and it embraces regulations to promote not only the health, peace, morals, education, and good order of the people, but the public convenience and general prosperity.

3. The fourteenth amendment to the Federal Constitution does not prohibit a reasonable classification of persons and things for the purpose of legislation.

4. A reasonable classification of persons and things for the purpose of legislation is permissible under the provision of the State Constitution forbidding the enactment of local or special laws.

5. A permissible classification for the purpose of legislation is such as is reasonable in view of the object sought to be accomplished; the discrimination must rest upon some reasonable ground of difference between the persons or things included and those excluded, having regard to the purpose of the legislation, and, within the sphere of its operation, the statute must affect all persons similarly situated, and the constitutional requirement of uniformity in the case of a general law is complied with if it operates alike upon all persons or property under the same circumstances and conditions.

6. In determining the reasonableness of a classification adopted by a particular statute, all reasonable doubts are to be resolved in favor of the validity of the statute, and it is to be presumed that the Legislature acted upon a knowledge of the facts, and had in view the promotion of the general welfare of the people as a whole.

7. The Legislature having, by the enactment of a statute involving a classification of persons or things for the purpose of the legislation, presumably determined that a difference of conditions exists rendering the legislation proper, to justify the court in declaring the statute void for unreasonable classification, it must be able to say, upon a critical examination of the statute in the light of the object sought to be accomplished, or the evil to be suppressed, that the Legislature could not reasonably have concluded that distinctions existed relating to the purpose and policy of the legislation.

8. The Legislature has the power to enact laws regulating the rate of interest that may legally be taken for the loan or forbearance of money, and to prescribe penalties for their violation.

9. The Legislature has power to prescribe a criminal penalty, not unreasonably excessive, for the violation of usury laws.

10. To suppress the commonly known practice of exacting excessively high rates of interest and charges in the case of small loans, which practice is generally limited to that character of loans, or to the business of making them, and which affect a large class in the community, so as to render the practice harmful to the public welfare, it is not an unwarranted or unreasonable exercise of power to legislate by provisions appropriate to the object to be accomplished so as to reach the class of loans productive of the evil, without necessarily including those having no relation to it.

11. There existing a class of money lenders distinguished by the fact that their business consists to a large extent in making small loans at a rate of interest, or upon other charges, generally regarded as exorbitant, and usually to a class of borrowers who, by reason of their condition, must borrow from them or not at all, which business is well advertised and known, the Legislature is justified in treating such business and the persons engaged in it, as constituting a distinct class, in legislating to suppress the oppressive and extortionate practice growing out of the conduct of such business and transactions.

12. The statute of 1909 · (Ch. 135) ·declaring it unlawful to receive, or arrange for the receipt of, interest, increase or profit at a greater rate than 25 per centum per annum upon any loan of a sum less than $200, and that a violation thereof shall be punished as a misdemeanor by fine or imprisonment, or both,· is not unconstitutional on the

ground of arbitrary or unreasonable classification. As a general law it has a uniform operation, applying equally to all persons in the class and under like circumstances and conditions.

13. The statute (Laws 1909, Ch. 135) declaring it to be unlawful to receive, or arrange for the receipt of, interest, increase or profit greater than 25 per cent. per annum upon any loan of a sum less than $200, and that a violation thereof shall be punished as a misdemeanor, is not repugnant to the fourteenth amendment to the Constitution of the United States, nor to Section 6 of Article I of the State Constitution, forbidding that any person shall be deprived of life, liberty or property without due process of law, nor to Section 34 of Article I, requiring that all laws of a general nature shall have a uniform operation.

14. The statute (Laws 1909, Ch. 135) which declares it to be unlawful to receive, or arrange for the receipt of, interest, increase or profit at a greater rate than 25 per cent. per annum upon any loan of a sum less than $200, and that a violation thereof shall be punished as a misdemeanor, does not violate the constitutional provision prohibiting local or special laws regulating the rate of interest (Const., Art. III, Sec. 27), for it is a general law, and the rate of interest is not thereby regulated; there being no provision in the statute permitting the charging or receiving of any greater rate of interest than the legal rate otherwise fixed by law.

[Decided December 9, 1909.]                    (105 Pac. 299.)

ON RESERVED QUESTIONS from the District Court, Laramie County; HON. RODERICK N. MATSON, Judge.

An information was filed in the District Court against Ethelyn Margaret Sherman, charging that on March 29, 1909, she did wilfully and unlawfully arrange for the receipt of interest at a rate greater than 25 per cent. per annum upon a loan of $25. Upon the hearing of a demurrer to the information, the cause was ordered sent to the Supreme Court for its decision upon certain reserved questions, involving the constitutionality of the statute under which the information was filed. The questions are stated in the opinion.

*C. L. Rigdon,* for the State.

The statute in question was enacted in the exercise of the police power of the State, and the Legislature could, under its police power, pass such laws as were necessary to regulate a business which it believed inimical to the public interest. (State v. Wickenhoefer, 64 Atl. 273.)

The statute is not class legislation, and does not create an arbitrary classification of loans. The purpose of the law is to regulate a business and not to create a class. It subjects all persons in a particular business to its terms. (Jackson v. Shawl, 29 Cal. 267; Youngblood v. Trust & Sav. Co., 95 Ala. 251; Carruthers v. Andrews, 42 Tenn. 378; State v. Wickenhoefer, 64 Atl. 273; Barbier v. Connolly, 113 U. S. 27; Ry. Co. v. Mackey, 127 U. S. 205; Otis v. Parker, 187 U. S. 606; Ry. Co. v. May, 194 U. S. 267.)

*T. Blake Kennedy,* for defendant. (*Edmund J. Churchill,* of counsel.)

It is contended that the act claimed to have been violated by the defendant is unconstitutional in that it violates the fourteenth amendment to the Constitution, as being "class legislation;" in that it violates Section 27 of Article III of the State Constitution, forbidding local or special laws regulating the rate of interest on money; and in that it violates Section 34 of Article I, requiring all laws of a general nature to have a uniform operation. It is class legislation, for the reason that it attempts to place restrictions and to impose penalties on persons loaning money in the amount of $200 or less, and makes no provisions for persons loaning sums above $200. The classification is unreasonable and wholly artificial. While reasonable classification is permitted, it must not be arbitrary or capricious. (Atkinson v. Woodmansee, (Kan.) 74 Pac. 641; Connolly v. Sewer Pipe Co., 184 U. S. 563; *In re* Grico, 169 U. S. 284; People v. Foundry Co., 66 N. E. 349; Slocum v. Bear River &c., (Cal.) 55 Pac. 402; Peonage Cases, 123 Fed. 671; State v. Walsh, (Mo.) 37 S. W. 112; State v. Thomas, 39 S. W. 481; White v. Hol-

man, (Ore.) 74 Pac. 933; People v. Windhols, 86 N. Y. S. 1015; Davidson v. Jennings, 27 Colo. 187; *In re*. Abel, (Ida.) 77 Pac. 621; *In re*. Jarvis, (Kan.) 71 Pac. 576; People v. Zimmerman, 92 N. Y. S. 497; State v. Dodge, (Vt.) 56 Atl. 983.) It will be observed from the authorities that classifications which have no reasonable basis, which do not create a cleavage, so to speak, upon lines which are natural and not artificial, constitute class legislation and are void.

A usury statute substantially like the one under consideration has been held void in California. (*Ex parte* Sohncke, 82 Pac. 956.) A similar provision in an Illinois statute was held void. (Massie v. Cessna, 82 N. E. 152; see also Owen v. State, (Tex.) 112 S. W. 1075.) The statute artificially and without any good reason creates a class of money lenders, viz: those loaning sums under $200. This fatal defect in the law is so inseparably a part of the statute that it cannot be eliminated therefrom, and therefore the entire act must fail.

The statute destroys uniformity of interest rates, and is therefore void as special legislation. (People v. Haselwood, 116 Ill. 319; Wheeler v. City, 77 Pa. St. 338; State v. Tolle, 71 Mo. 650; Club &c. v. State, 42 So. 1040; Friend v. Levy, (Ohio) 80 N. E. 1036; State v. Schraps, 106 N. W. 106.) It legislates as to a class of interest conditions, without providing uniformly as to all classes. (Counsel also cited in support of their contention, generally, the case of *In re*. Application of Jefferson Credit Co., for a license under the Pennsylvania Act of May 11, 1909, decided by the Court of Quarter Sessions for the County of Philadelphia in July, 1909.)

POTTER, CHIEF JUSTICE.

This case is here from the District Court of Laramie County upon the following reserved constitutional questions:

First. Is Chapter 135 of Session Laws of 1909, being "An act to prevent extortion in relation to small loans,

making such extortion a misdemeanor, and providing penalties therefor, and for other purposes," unconstitutional as being contrary to Article 14 of the Amendments to the Constitution of the United States, in that it denies to certain citizens the equal protection of the law?

Second. Is said Chapter 135 of the Session Laws of 1909 contrary and repugnant to Section 6, Article I, of the Constitution of the State of Wyoming, in that it attempts to deprive certain persons of liberty without due process of law?

Third. Is said Chapter 135 of the Session Laws of 1909, contrary and repugnant to Section 34 of Article I, of the Constitution of the State of Wyoming, in that it denies the uniform operation of the laws of a general nature?

Fourth. Is said Chapter 135 of the Session Laws of 1909 contrary to Section 27 of Article 3 of the Constitution of the State of Wyoming, in that it is a special law attempting to regulate the rate of interest on money in special cases?

The statute referred to was approved February 27, 1909, and by its terms was to take effect and be in force from and after its passage. The title of the act is stated in the first question. Its material provisions are as follows:

"Section 1. It shall be unlawful for any person, corporation, association, or co-partnership, his or its agent or employee, by any method or device whatsoever, to receive, or arrange for the receipt of, interest, increase or profit at a greater rate than 25 per centum per annum upon any loan made by any such person, corporation, association, or co-partnership of any sum less than two hundred dollars. The said sum of 25 per centum per annum interest, increase and profit shall cover all commissions, fees, charges, interest and increase of every character whatsoever."

"Sec. 2. Every person, corporation, association, or co-partnership, and every employee or agent of any such person, corporation, association or co-partnership who shall

violate any of the provisions of this act shall be guilty of a misdemeanor, and upon conviction thereof, be punished by a fine for each offense, in any sum not less than twenty-five dollars, nor more than two hundred dollars, or by imprisonment in the county jail, for not less than thirty days, nor more than six months, or by both such fine and imprisonment."

The questions reserved for decision arose upon a demurrer to an information filed under said statute charging that the defendant on March 29, 1909, did wilfully and unlawfully arrange for the receipt of interest at a rate greater than 25 per cent. per annum upon a loan of twenty-five dollars to a person named in the information.

The demurrer challenges the validity of the statute on the ground of its alleged repugnancy to each of the constitutional provisions referred to in the reserved questions, and it is here contended that the act violates said provisions and is therefore void for the reason that it unreasonably and arbitrarily creates a separate class of money lenders, and imposes upon those whose transactions bring them within that class a restriction and penalty from which other money lenders are exempt, and for the further reason that it is a special law regulating the rate of interest on money.

A prior statute, in force when the act in question was passed, provides that any rate of interest which may be agreed upon, not exceeding twelve per cent. per annum, shall be valid upon any loan or forbearance of money; and that if any greater rate of interest than that allowed shall be contracted for or received, or reserved, the contract shall not therefore be void; but if in any action on such contract, proof be made that illegal interest has been directly or indirectly contracted for, taken or reserved, the plaintiff shall only recover the principal, without interest, and the defendant shall recover costs; and if any interest shall have been paid thereon, judgment shall be for the principal, deducting interest paid. (Rev. Stat. 1899, Sections 2447, 2451.)

It is argued on behalf of the defendant that the act of 1909 does not have the effect of increasing the rate of interest which may legally be received or contracted for upon any loan, but that its only effect is to constitute the act of receiving or arranging for the receipt of a greater rate than 25 per cent. per annum upon the loan of a sum less than $200 a misdemeanor, while the former statute continues in full force exacting the penalty of the loss of interest and costs in case of every usurious loan, whenever in an action thereon proof is made that illegal interest has been taken or contracted for. It will be assumed for the purposes of the case that this is a correct construction of the statute.

The act here involved was enacted as a police regulation, as are all statutes for the prevention of usury. The police power of the State is most essential and very comprehensive. Under that power regulations are prescribed for the protection of the public health, public safety, and public morals, or, as more generally stated, the public welfare; and it is held to embrace regulations not only to promote the health, peace, morals, education, and good order of the people, but to extend to regulations designed to increase the industries of the State, develop its resources, and add to its wealth, or to promote the public convenience or general prosperity. (Atchison &c. R. Co. v. Matthews, 174 U. S. 96; Chicago &c. R. Co. v. People, 200 U. S. 561, 4 Am. & Eng. Ann. Cas. 1175.)

It is well settled that the Fourteenth Amendment to the Federal Constitution does not prohibit a reasonable classification of persons and things for the purpose of legislation. (Atchison &c. R. Co. v. Matthews, *supra.*) And it is also well settled that such a classification is permissible under the provision in a state constitution forbidding the enactment of local or special laws. (McGarvey v. Swan, 17 Wyo. 120, 96 Pac. 697.) The classification must be reasonable in view of the object sought to be accomplished. The discrimination must rest upon some reasonable ground of difference between the persons or things included and

those excluded, having regard to the purpose of the legislation, and within the sphere of its operation, the statute must affect all persons similarly situated. The constitutional requirement of uniformity in the case of a general law is complied with if it operates alike upon all persons or property under the same circumstances and conditions.

Obviously it cannot at all times be easy to determine what is reasonable or unreasonable in the matter of classification. The rule applies that all reasonable doubts are to be resolved in favor of the validity of the statute, and that the Legislature is presumed to have acted upon a knowledge of the facts, and to have had in view the promotion of the general welfare of the people as a whole; and hence the classification and discrimination involved therein must clearly appear to be unreasonable and therefore arbitrary in order to justify the court in declaring an act assailed on that ground to be void. The Legislature having presumably determined that a difference of conditions exist rendering the legislation proper, the court must be able to say, upon a critical examination of the statute in the light of the object sought to be accomplished, or the evil to be suppressed, that the Legislature could not reasonably have concluded that distinctions existed relating to the purpose and policy of the legislation. (Atchison &c. R. Co. v. Matthews, 174 U. S. 96; Home Tel. Co. v. Los Angeles, 211 U. S. 265; District of Columbia v. Brooke, 214 U. S. 138; State v. Evans, 130 Wis. 381; McKnight v. Hodge, (Wash.) 104 Pac. 504.)

It is too late to question the right of the Legislature to enact laws regulating the rate of interest that may be legally taken for the loan or forbearance of money, and to prescribe penalties for their violation. (29 Am. & Eng. Ency. L., 2nd ed., 455; Freund on Police Power, Secs. 302-304; State ex rel. Ornstine v. Cary, 126 Wis. 135; Ex parte Berger, 193 Mo. 16.) We do not understand it to be here contended that it is beyond the legislative power by a statute otherwise valid to prescribe a criminal penalty, not unreasonably excessive, for the violation of

usury laws.  In several states statutes have been enacted and enforced imposing such penalties.  (29 Ency. L., 2nd ed., 559.)  And the power generally to do so seems not to have been judicially denied, while it has been upheld in several cases.

In the case of State *ex rel.* Ornstine v. Cary, 126 Wis. 135, the relator had been arrested charged with violating a statute declaring it to be a misdemeanor for any person to receive or demand more than ten per centum per annum upon the sum of money actually loaned, when repayment is secured by "chattel mortgage, bill of sale, pledge, receipt or other evidence of debt upon chattel goods or property, or by assignment of wages," or to demand or receive more than fourteen per cent. per annum of the sum so loaned and secured in full for all examinations, views, fees, appraisals, &c. in transacting the business connected with such loan.  The act was held to be a reasonable and valid exercise of the police power.  The court said: "The most common devices to accomplish such purposes (exacting illegal interest) were by means of charges against the borrower in the form of commissions, fees for appraisals, views, examinations, and renewals in connection with the loan.  The making of such contracts and insuring performance by pledge of personal property so readily and generally results in inflicting injuries on the borrower through unreasonable exactions that they are held as injurious to the community and as much against public policy as the unreasonable charges of interest.  This injurious consequence affords a sufficient ground for the regulation by law, and is as proper for the protection of the borrower as a limitation on the rate of interest."  Answering the argument that the imposition of a criminal penalty exceeded the legislative power, it was said:  "We are unable to perceive anything in the nature of the penalties prescribed for a violation of the statute inconsistent with the constitutional guaranties of liberty.  It was clearly within the legislative power to adopt such sanction for the law as it might deem reasonably necessary and appropriate to ac-

complish its purpose. There is nothing in the punishment inflicted either unreasonably excessive or arbitrary in its nature, nor is it unlike punishments usually inflicted upon persons whose transgressions of the law's commands evince a like degree of turpitude."

A statute of Missouri made it a misdemeanor to take or receive, directly or indirectly, by means of brokerage charges, or otherwise, for the forbearance or use of money or other commodities, any interest at a greater rate than two per cent. per month, and made the act punishable by fine and imprisonment. A prior statute remaining in force limited the rates of interest that might be legally charged, the highest rate so allowed being eight per cent per annum. The later statute, which for the first time made usury a criminal offense, came before the Supreme Court of Missouri in a case above cited upon the contention that it was void for lack of legislative power to punish usury as a crime, and also because it discriminated between those who received more than two per cent. per month interest, and those whose transactions while exceeding the legal rate did not exceed two per cent. per month. The question is learnedly and comprehensively discussed in the opinion, and the conclusion of the court is stated as follows:

"The right to regulate interest by legislative enactment being one conceded to be within the power of the Legislature, that body can regulate or prohibit it altogether. And if previous legislation on this subject punishing the infractions of usury laws by forfeiture of the interest have proved ineffectual to check the evil, it was perfectly competent for the Legislature to adopt more drastic measures and make it criminal. If the Legislature had the power to say what rate of interest in its own opinion transcended a fair and just remuneration for the loan of money or property, it was competent to make any excess over such rate a misdemeanor. In our opinion it would have been perfectly competent for the Legislature to have made it a misdemeanor to exact and receive interest over and above the legal rate fixed by law, but certainly the act

now under review is not open to the objection of being un-
reasonable, inasmuch as it only denounces the taking of
interest beyond two per cent. per month as criminal.   Cer-
tainly it would seem that two per cent. per month would
gratify the greed of the most unconscionable usurer, and
this act is leveled only at that class who take and receive
interest beyond that amount.   *   *   *   In our opinion
it is perfectly competent for the Legislature to determine
for itself what amount of usurious interest, the taking
or receiving of which should constitute a criminal offense.
It had already provided for the forfeiture and penalties
which should attach for the taking of all usurious interest,
but in denouncing for the first time as a crime a class of
usurers, it had the power to select that class which takes
or receives greater interest than two per cent. per month.
It did not attempt to affect any other class and it is a
general law as far as this class is concerned.   The law
operates upon every person within the limits of the State
who violates it.   It does not lie in the mouth of one
guilty of transgressing it, to say to the Legislature, there
are other classes to which this law might apply.   The
same could be said of nearly any other criminal statute.
Had this law exempted any person who exacted more
than two per cent. per month by mere arbitrary provision,
there would be force in the argument of counsel, but
there is no such exception to be found in the act.   It applies
to all persons who are in or who may come into like
situations and circumstances and is therefore not special
or class legislation within the meaning of either of the
constitutional provisions above relied on."   (*Ex parte*
Berger, 193 Mo. 16, 90 S. W. 759, 3 L. R. A. (New Series)
530, 5 A. & E. Ann. Cas. 383.)

In support of the objections to the statute before us it
is argued that there is no reasonable ground of difference
authorizing this legislation between the loan of a sum
less than $200, and the loan of a greater amount.   While
there seems to be some plausibility in the argument, it
ignores the conditions which must be taken to have induced

the enactment of the statute. The Legislature obviously had in view the protection of the public against extortionate practices in the loaning of small sums of money. Even as to such loans the taking of usurious interest was not declared to be a misdemeanor unless the interest exceeded a stated rate considerably in excess of the rate otherwise allowed by law. If the objectionable practice which was intended to be checked existed habitually if not exclusively in the case of the kind of loans described in the statute, and only exceptionally if at all in other cases, it would be going very far, we think, and further than courts have usually gone, to deny the legislative discretion to make such provision, applying the same equally to all under like conditions, as would, in its judgment, tend to suppress the evil, or to require that transactions be included in which the taking of the extortionate interest denounced by the statute was not known or believed to exist, or if existing at all only in such unusual or exceptional cases as to attract little if any public notice. "Evils must be met as they arise, and according to the manner in which they arise." (Heath & Milligan Co. v. Worst, 207 U. S. 338.) "Legislation should be adapted to existing conditions." (Commonwealth v. Strauss, 191 Mass. 545.) "It is almost impossible, in some matters, to foresee and provide for every imaginable and exceptional case, and a legislature ought not to be required to do so at the risk of having its legislation declared void, although appropriate and proper upon the general subject, * * * so long as there is no substantial and fair ground to say that the statute makes an unfounded general classification, and thereby denies to any person the equal protection of the laws." (Ozan Lumber Co. v. Union Co. Bank, 207 U. S. 251.)

It is a matter of common knowledge, upon which the Legislature is to be presumed to have acted, that in this State at least the taking of interest much in excess of the rate allowed by law was customarily practiced by those engaged in the business of making small loans, usually made under such circumstances to persons of small means,

who, by reason of their actual or supposed necessities, are compelled to deal with, and yield to the demands of those engaged in that business. And it may be the fact, at least we are not advised to the contrary, that the practice of exacting such oppressive rates of interest is very largely if not entirely confined to the class of persons and transactions referred to. There would thus appear to be a substantial difference between that class and others with respect to the rate of interest demanded and received. The act fixes the dividing line between the class affected by it and the persons and transactions excluded at the sum of $200. It is evident that intending to cover the condition above mentioned, a dividing line was necessary to prevent uncertainty, and in that respect much must be left to the discretion of the Legislature. It would seem indeed that the maximum amount named is large enough to reach the practice deemed to be oppressive to the borrower and injurious to the public, and that a person requiring the loan of a larger sum would ordinarily at least be in a position of greater freedom in the matter of agreement as to the rate of interest, as well as in the selection of the person with whom to arrange for the loan.

Statutes similar in effect to the one here in question appear to have been recently enacted in several states, and such statutes when coming before the state court of last resort upon constitutional objections, have in most cases been held valid.

In Alabama a statute provided that "any banker who discounts any note, bill of exchange or draft, at a higher rate of interest than eight per cent. per annum, not including the difference of exchange, is guilty of a misdemeanor." Against the contention that it was unconstitutional because class legislation in that it referred to bankers only, it was held to be valid, for the reason that the business of banking is of a character in relation to loaning transactions differentiating it from all others in respect of usury, and requiring more stringent measures of repression.

(Youngblood v. Birmingham T. & S. Co., 95 Ala. 521, 36 Am. St. 245.)

A statute of Connecticut enacted in 1907 provided for the punishment by fine or imprisonment of any person, or agent of any person, other than a national bank or a trust company chartered by the state, or a pawnbroker, who should demand, accept, or agree to receive, interest at a greater rate than fifteen per cent. per annum; and loans made to any national bank or any bank or trust company duly incorporated under the laws of the state, and a *bona fide* mortgage of real or personal property, were excepted from the provisions of the act. Upon demurrer to an information charging a violation of that statute, its constitutionality was challenged. The Supreme Court of Errors, in an opinion by Baldwin, C. J., handed down in June of the present year, sustained the validity of the statute. The court declared with reference to the transactions excluded from the statute, (1) That the exception of loans by national banks was merely a recognition of the legal effect, in excluding state legislation on the same subject, of the statutes of the United States which regulate the right of those banks to make such contracts. (2) That the exception in favor of loans by trust companies chartered by the state was fully justified by the peculiar character of those institutions, each created by special act, and subject to the inspection of the bank commissioners. (3) That there was reasonable cause to except pawnbrokers, for their business could only be carried on by those found by the public authorities to be suitable persons to be engaged in it, and its character is such as to make it proper to allow a charge of interest beyond 15 per cent. per annum. (4) That there was a sufficient reason to exclude loans to a bank or trust company, for such institutions were managed by those accustomed to financial operations and familiar with the worth of money in the market from day to day, and they might well be deemed to require no statutory protection against being forced by their financial necessities to pay excessive interest for

moneys borrowed.   (5) That the act was not invalidated
by the exception of mortgages, for they are required to
be recorded, and publicity is one of the best safeguards
against unconscionable contracts, and other reasonable pro-
vision had been made as to the rate of interest which
might be charged in the case of chattel mortgages.   The
court concludes its discussion of the question by saying:

"The General Assembly, in respect to the matter of
usury, had the right to deal with different classes of money
lenders or money borrowers in a different way, provided
there were nothing apparently unreasonable in creating
such distinctions, and all the members of each class were
treated in the same manner.   The enactment of the statute
now in question fell within this right."   (State v. Hurlbut
et al. (Conn.) 72 Atl. 1079.)

In Delaware an act passed in 1905 provided for certain
criminal penalties upon all persons, firms, and corporations,
except national and state banks and trust companies, or-
ganized under the laws of the state, who should make
loans in sums not exceeding $100 at a rate of interest
greater than 6 per cent., without first procuring from a
designated public officer a certificate, and doing certain
other things as provided in the act.   The title of the act
was:   "An act licensing brokers or other persons to make
small loans and charge interest in excess of the present
legal rate."   The act permitted one who had procured
the certificate provided for to charge in addition to the
legal rate of six per cent., an additional sum at the rate
of five per cent. per annum and provided that no further
interest, commission or charge should be made.   The con-
stitutionality of the act was challenged by demurrer to
an indictment charging a violation by one not holding
the required certificate, and the court upon all constitu-
tional objections held the statute to be valid.   (State v.
Wickenhoefer, 64 Atl. 273.)   We are here concerned only
with that part of the decision referring to the provision
of the statute restricting its operation to persons making
loans in sums not exceeding $100.   It was contended that

such provision unreasonably discriminated in favor of such persons and against those lending sums exceeding $100. One section of the act provided that nothing in the act contained should be construed to modify or repeal the usury laws of the state, or to authorize the loaning of money in sums of more than $100 at a greater rate than 6 per centum per annum, and the penalties of the act were added to the penalties provided by the usury law. Answering the contention with reference to the limitation in the act upon the amount of the loan the court said:

"We understand it to be one of the contentions of the defendant that the statute confers privileges on the former class (those loaning sums not exceeding $100) that are denied to the latter, and imposes penalties on the latter class from which the former is exempt. The Legislature believing that certain things were done and certain methods employed that were oppressive to a large number of persons of small means, and injurious to the public welfare, passed the act in question for the purpose of remedying an existing evil. * * * The effect of the statute, of course, was to give those persons who made small loans certain privileges which were not given to those who made larger ones; but, if it operated alike, and without discrimination, upon all of the persons * * * who made small loans, we fail to see wherein it made any unlawful classification within the meaning of the constitution. The purpose of the law was to regulate a business and not to create a class."

The United States District Court for the Northern District of Alabama, in the case of *In re.* Home Discount Co., 147 Fed. 538, had under consideration a statute of that state providing among other things "that all persons engaged in the business of money brokers or loaning money or taking security therefor by bills of sale, mortgages on or conveyances or liens of any kind on personal property or personal effects or other personal security, * * * shall when such loan is made, express in the instrument securing such loan, the rate of interest * * * the date of said loan, the fact that the instrument is taken for a loan of money,

a minute description of the property securing the loan, and if household goods from whom purchased, the date when said loan is due, and shall * * * file said instrument for record" &c. A contract in violation of the act was declared to be void, and one section provided that the act should not apply "to the business of banking and loans, when the amount exceeds seventy-five dollars." The court assumed without deciding that the last mentioned provision excepted all loans by banks and bankers, and that all loans by others under $75 were within the statute. It was held in an opinion by Jones, District Judge, that the Legislature had not unjustly discriminated between the class whose conduct the act regulated, and those whose conduct it left unregulated, "as regards these small loans," and that "the Legislature could well regulate the conduct of one class and leave the other unregulated, and discriminate between loans under and those over $75." In considering the purpose of the legislation the opinion discusses the mischief that had caused its enactment. Among other things it was said:

"It arose in the contracting and collection of small loans in dealings with necessitous borrowers and small wage earners, who as a rule had no security except the pledge or assignment of wages to be earned and household goods. The borrowers agreed to whatever rate of interest was demanded. * * * In the business of banking these small loans were seldom, if ever, made to this class of borrowers on the security named in the statute. Loans by banks and bankers under $75, and loans over that amount, no matter by whom made, were rarely secured by an assignment of future wages or a lien upon household goods, and were not productive of the evil which the statute seeks to cure. The Legislature knew that the taking of the security named by one class of lenders had almost invariably brought forth evil, while the same loans, on the same security, by another class in the business of banking, had seldom, if ever, been harmful to the public welfare. The lawmakers, in devising a remedy had to

consider the different habits and conduct of men in these
occupations as to these loans, in order to apply an intelli-
gent and just preventative, and in doing so necessarily
discriminated between these classes. * * * The statute is
a police regulation pure and simple, to check usury and
promote fair dealings in loans between one class of money
lenders and one class of borrowers on a particular kind
of security. * * * If the practice of one class of money
lenders makes such precaution necessary as to them, it
would be going an unwarranted length to hold that the
state police power must either leave them entirely alone
or else provide. the same regulations, regardless of any
need for them, for like loans made by all other classes
of money lenders.  Such a contention has met with almost
universal disapprobation in the courts, both state and fed-
eral.  If the court should strike down the statute for
the reason here urged, it would be a bald invasion by the
judiciary of the legislative prerogative, in a matter over
which the constitution has left the lawmaker almost bound-
less discretion, simply because the meshes of the statute
have not been woven so fine as to gather in every possible
offender in every other branch of the money lending busi-
ness."

A statute of Massachusetts enacted in 1898 provided
that no person should engage in the business of making
loans secured by mortgage or pledge of household furni-
ture or other personal property exempt from attachment,
or by assignment of wages, for less than $200 nor at a
rate of interest greater than 12 per cent. without first
obtaining a license, &c.  A subsequent section of the stat-
ute provided a penalty by fine or imprisonment or both
for engaging in or carrying on the business aforesaid,
unless duly licensed.  (Rev. Laws, Mass. Ch. 102, Secs.
57, 66.)  The title of the original act was: "An act rel-
ative to small loans and the redemption of the security
therefor."  The constitutionality of the statute does not
appear to have been determined or questioned.  But it.
has been construed and enforced.  (Commonwealth v. Mor-

ris, 176 Mass. 19.)   However, another statute of the same
state, enacted in 1908, (Mass. Acts 1908, Ch. 605.) has
been upheld upon an objection to its constitutionality, which
declares invalid an assignment of or order for wages to
be earned in the future, to secure a loan of less than $200,
until the assignment or order is accepted in writing by the
employer, and filed and recorded with the city or town
clerk, and when the assignment or order is made by a
married man, unless the written consent of his wife be
attached thereto; and further provides that national banks,
and all banking institutions which are under the supervision
of the Banking Commissioner, and loan companies and as-
sociations established by special charters and placed under
State supervision shall be exempt from the provisions of
the act.   The above provisions were included in Sections
6, 7, and 8 of the act—Section 6 containing the exception
as to banks and loan companies.   The preceding sections
seem to be similar to the act of 1898 construed in the
case of Com. v. Morris, *supra,* but apply only to a loan of
$200 or less, for which no security other than a note or
contract, with or without an endorser, is taken, and were
not considered in the case now referred to, there being
no occasion to do so.   The court say in the opinion in
substance that the regulation of the character of con-
tracts mentioned was reasonable as tending to lessen the
opportunity of wage earners to be dishonest in procuring
credit on the faith of their expected possession of earnings,
to diminish the risk of the employer's refusal to pay, and
to check the rapacity of unscrupulous money lenders who
are inclined to take advantage of the needs of employees.
It was held that the statute was not unconstitutional be-
cause dealing with security for loans to the exclusion of
security for other debts, and without specifically referring
to the restriction as to the amount of loan to which the
sections applied, they were held to be valid, and the reg-
ulation as to the wife's consent, and the exception of banks
and loaning associations under State supervision were de-
clared not unreasonable.   (Mutual Loan Co. v. Martell,

200 Mass. 482.)  If the case may be regarded as an in-
dication of the view that the court would take of a statute
such as the one here under consideration, the principle of
which, though with a more restricted operation, is em-
bodied in the first part of the Massachusetts statute, it
would seem to be in favor of its validity.

In the Mississippi case of Rodge v. Kelly, 88 Miss. 209,
117 Am. St. 733, 40 So. 552, an act of the Legislature
imposing a heavy privilege tax on persons loaning money
secured by bill of sale or mortgage on designated kinds
of personal property was adjudged to be unconstitutional
for the stated reason that the tax was imposed irrespective
of the rate of interest charged, or the value of the securities,
the court saying:  "The trouble with the statute as drawn,
is that it prohibits loans on personal securities of the kind
named, without reference to any rate of interest.  If only
the securities be of the kind named in this statute, no loan
could be made, except upon payment of this high license,
not exacted of any other money lender, at even six per
cent., or five per cent., or any per cent. whatever.  Again,
* * * money lenders on personal securities of this kind
would have to pay this high license in order to loan at
any rate of interest, however low, on jewelry worth one
hundred thousand dollars in a store, or silverware worth
one hundred dollars in a store, or on all the pianos in a
factory."  This language follows a statement of the un-
derstood purpose which was strongly approved, viz:  "to
provide this high license in the case of the moneylending
sharks, * * * who are in the habit of lending small sums
of money at most iniquitous and exorbitant rates to serv-
ants in families and other necessitous persons, and securing
from such persons bills of sale of household and kitchen
furniture, plate, ware, etc., * * * in the actual personal
use of such persons so securing such loan."  And it is
said:  "The purpose of preventing this infamous system
of robbery under the guise of money lending, which sought
to subject to quick sale, within a week's time often, the
articles which constitute in such actual personal use of

those securing the loan, the necessities of decent existence, is a justly righteous purpose."

The same statute again came before the court in Hyland v. Sharp, 88 Miss. 567, resulting in the same conclusion as to its invalidity on the grounds stated in the previous case, and it was stated that the statute was so drawn as to fail to accomplish its wholesome purpose.

Counsel for defendant cite the case of *Ex parte* Sohncke, 148 Cal. 262, 82 Pac. 956, 2 L. R. A. (N. S.) 813, 7 A. & E. Ann. Cas. 475, and rely upon it as denying the constitutionality of a statute similar in effect to the one here challenged. We do not so understand the case, or the statute there considered. The material provisions of the statute are quoted in full in the opinion, to which we refer for such parts as are not here stated. It declared that it shall not be lawful to lend money upon chattel mortgages, "where there is taken for such loan any security upon upholstery, furniture or household goods, oil paintings, pictures or works of art, pianos, organs or sewing machines, iron or steel safes, professional libraries or office furniture, or fixtures, instruments of surveyors, physicians or dentists, priting presses or printing materials, to have or charge for the use of money so loaned more than the rate of one and one-half per cent. per month interest thereon, and that no additional sum, either in the way of bonus or otherwise, shall be required or exacted of the borrower or borrowers; and further, that no charge for examination or valuation of property offered, insurance of same, and preparation, execution and recording of necessary papers shall be imposed, except as follows: For examination or valuation of property offered for mortgage and preparation of papers (both included), no greater sum than five dollars where the amount loaned does not exceed three hundred dollars."

In disposing of the objection to the statute the court, after stating the rules upon which the validity of a classification of subjects or persons for legislation must depend, remarked with reference to the statute before it: "There

is no substantial reason why those who lend money in sums not exceeding $300 on chattel mortgages of the articles described in the statute" enumerating them, "should be limited in their charges, and the business they do in that respect made less profitable than it otherwise would be, while they, or others who loan on chattel mortgages upon instruments of a photographer, live stock, agricultural implements, equipments of libery stables, or other property allowed to be mortgaged, * * * and not enumerated in the act under consideration, or who lend upon pledges of any kind of personal property, or who lend in sums exceeding $300 upon any kind of security, should be allowed to exact any rate of interest or other charge which they can obtain from the borrower. It is a part of the same kind of business, and there is no distinction between the particular classes of persons or things affected by the act and those exempted from its provisions that will justify special legislation."

It was not said or held, as counsel seem to infer, that in no case would it be proper to make a regulation for those loaning sums not exceeding $300, to the exclusion of those loaning larger amounts. The court had in view a particular statute, and its decision and statements must be interpreted upon that basis. It is not difficult to understand that the court might fail to perceive a difference, in relation to the legislation, between the mortgage of the instruments of a surveyor, and those of a photographer, or oil paintings, especially if kept in stock for sale or if possessing much value, and live stock, or between professional libraries and agricultural implements in actual use, or between printing presses and printing material, and the tools and machinery employed in other industries. Had household goods been alone included, some reason might perhaps have been conceived for special regulations in the case of small loans, unless indeed the state is exempt from the mischief concerning such loans apparently prevailing elsewhere. However that may be, there is a manifest distinction between the statute considered in the Sohncke case and our own. If that case

should be regarded as denying the right to so legislate as to prevent extortionate charges of interest on small loans, in view of the well known conditions attending that business, it would in our opinion be contrary to the weight of authority.

In connection with the Sohncke case, and our observations concerning it, we refer again to the Wisconsin case of State *ex rel.* Ornstine v. Cary, *supra,* sustaining a statute limiting, under a penalty of fine or imprisonment, the interest and other fees to be charged upon a loan secured by any chattel mortgage or assignment of wages, without distinction, on the ground that the making of the contracts covered by the statute and insuring performance by pledge of personal property so readily and generally results in injury to the borrower through unreasonable exactions that they become as injurious to the public as unreasonable charges of interest. Without questioning its validity, a somewhat similar statute has been enforced in New York. (People *ex rel.* v. Warden, &c., 89 N. Y. Supp. 322.)

Counsel also cite Massie v. Cessna, 239 Ill. 352, 88 N. E. 152, as sustaining on principle the objections to this statute. In that case an act requiring a compliance with certain prescribed formalities to render valid an assignment of wages or salary, was held unconstitutional on the ground that it applied not only to wages to be paid to artisans, mechanics, laborers and others employed in various manual occupations, but also to salaries, thus including the compensation for personal service of high salaried officers of corporations and public officers, the court saying that there is nothing in the public policy of the state requiring or warranting a statute giving to the latter class of persons the benefit proposed that might with entire propriety be given to wage earners. Our attention is called particularly to the holding and remarks of the court concerning a section of the statute which declared that an assignment of wages or salary given to secure a loan or to pay a debt tainted with usury should be void. That provision was held to be unconstitutional on the ground "that it makes the assign-

ment given as security for a loan tained with usury void, while the law of the state makes no such provision with reference to other instruments or other conveyances given to secure usurious debts." We do not think the provision thus condemned is analogous to that made by our statute, which it is conceded does not affect the validity of the contract, but leaves it subject to the penalty imposed by the prior statute upon all usurious contracts alike. Nor do we think that the case is to be regarded as authority for the proposition that a statute may not provide a personal penalty for usury so far in excess of the legal rate as to be oppressive and pernicious and apply it alone to the class of transactions known to be productive of the particular evil required to be corrected in the interest of the public welfare. In an earlier Illinois case, Lasher v. People, 183 Ill. 226, 75 Am. St. 103, a statute was held valid regulating the shipping, consignment, and sale of produce, fruits, vegetables, butter, eggs, poultry and like products, but excepting grains, live stock and dressed meats. The court said: "The law which classifies small commission merchants engaged in the produce commission business rests upon a reasonable ground as a basis for the classification. Such a business may afford great opportunities for swindling, and be productive of great abuses, and the legislature may properly enact a law applying to cities of such size as in the legislative judgment would permit the growth and existence of such abuses."

Another case is cited which was decided by the Court of Quarter Sessions for the County of Philadelphia, in July of the present year. From a certified copy of the opinion furnished us by counsel, it appears that a statute was recently enacted in Pennsylvania entitled "An act to regulate the business of making small loans of two hundred dollars or less for which no security other than a note or contract, with or without endorser, is given, and to provide for the licensing of such business and to regulate the assignment of wages when given as security and providing a penalty for the violation of the provisions thereof." The

act, it seems, allows the lender covered by its provisions to receive, in addition to lawful interest, an additional sum equal to lawful interest for twenty months as a "brokerage" charge. A party having applied for a license, the act was held invalid as adopting an unreasonable classification. No authorities are cited in the opinion, but the court declared that there was no just basis for a discrimination between a loan of $200 or less, and one for a larger sum, or between a loan where a note or contract is given and one where there is no such paper, or between borrowers who are wage earners and married men, and non-wage earners and men without wives. The main invalid feature of the act was said to be that it classifies men and not transactions, and enacts a law against wage earners only, which does not affect other citizens, and that it odiously operates to bind the heads of families to future service by creditors. (*In re.* Application of Jefferson Credit Co. for License Under Act of May 11, 1909.)

It is obvious that the Pennsylvania act reviewed in the case above cited contains numerous provisions not embraced in our own, though it seems to have been similar to the Massachusetts statute sustained in Mutual Loan Co. v. Martell, *supra*. It may be conceded that the opinion condemns as unwarranted for the purposes of the legislation the classification of loans with reference to the amount, by including loans not exceeding $200 and excluding others. In that respect the statement of the court that such classification is unjustified would perhaps apply to the statute here under consideration, although there is no discussion in the opinion of the mischief or evil, if any, which the Legislature desired to remedy. However, we are of the opinion that to suppress the commonly known practice of exacting excessively high rates of interest and charges in the case of small loans, evidently regarded by the Legislature as oppressive and mischievous, which practice is largely if not entirely limited to that character of loans, or to the business of making them, and which affect a large class in the community, so as to render the practice harmful to the public welfare, it is not an unwarranted or unreasonable

exercise of power to legislate by provisions appropriate to the object to be accomplished so as to reach the class of loans or transactions productive of the evil, without necessarily including those having no relation to it.

It is impossible to avoid the knowledge that in this State, as well as in others, there is a class of money lenders distinguished by the fact that their business consists, at least to a large extent, in making small loans at a rate of interest, or upon other charges, generally regarded as extremely exorbitant, and usually to a class of borrowers who, perforce, must borrow from them or not at all. The business is so well advertised and known that the Legislature, we think, was justified in regarding and treating it, and the persons engaged in it, as constituting a distinct class in the field of financial operations, and had the power to enact the statute here in question to suppress the practice, conceived by the Legislature to be oppressive and extortionate, growing out of the conduct of such business and such transactions. In our opinion, therefore, the statute is not unconstitutional on the ground of arbitrary or unreasonable classification. As a general law it has a uniform operation, for the reason that it applies equally to all persons in the class and under like circumstances and conditions.

The statute does not regulate the rate of interest, within the meaning of the constitutional provision prohibiting special legislation for that purpose, not alone because it is a general law, but because the rate of interest is not thereby regulated. There is no provision in this statute permitting the charging or receiving of any greater rate of interest than the legal rate otherwise fixed by law.

For the reasons stated, the opinion and decision of the court upon the reserved questions is that the statute described and referred to therein is not contrary or repugnant to the Fourteenth Amendment to the Constitution of the United States, nor to either of the sections of the Constiution of this State mentioned in said reserved questions, and is not, therefore, unconstitutional for either of the reasons suggested in said questions.

BEARD, J., and SCOTT, J., concur.