GHOLSON *v.* SMITH.

Division B. Nov. 20, 1950

No. 37645 (48 So. (2d) 603)

Paine & Paine, for appellant.

Richard B. Booth, for appellee.

Alexander, J.

This appeal involves the right of a beneficiary in a life insurance policy to claim the proceeds upon the death of insured caused by the act of the beneficiary.

Appellee is the widow of Kirby Smith who was shot to death by her. The appellant is the mother of deceased and, except for the widow, is his sole heir. Claims having been made by both parties to the proceeds of two policies, the insurance company paid the sums into court and impleaded the rival claimants. The policies are omitted from the record, by agreement, and we must assume that they contain no contractual provisions which would prevent the application of the general principles governing a decision of the right of a beneficiary to the proceeds.

Section 479, Code 1942, forbids inheritance by one who shall "wilfully cause or procure the death of another", and Section 672, Code 1942, forbids anyone to take under the will of one whose death he "shall wilfully cause or procure." Both statutes provide that the property of the deceased shall, in such circumstances, descend to his heirs, from which category the slayer shall be excluded.

Both parties impliedly concede that if appellee wilfully caused the death of her husband she is not entitled to recover. This view is supported by all the authorities and is, by implication, upheld in Penn Mutual Life Insurance Co. v. Nunnery, 176 Miss. 197, 167 So.

416, involving the right to the avails of a life insurance policy. The supporting authorities are abundant and selected citations are here made. Protective Life Insurance Co. v. Linson, 245 Ala. 493, 17 So. (2d) 761; Southern Life & Health Insurance Co. v. Mack, La. App., 17 So. (2d) 370; American Life Insurance Company v. Anderson, 246 Ala. 588, 21 So. (2d) 791; Metropolitan Life Insurance Co. v. Shane 98 Ark. 132, 135 S. W. 836; N. Y. Mutual Life Insurance Co. v. Armstrong, 117 U. S. 591, 6 S. Ct. 877, 29 L. Ed. 997; Vance, Insurance, 2d ed., Sec. 156; Couch, Insurance, Sec. 342; Joyce, Insurance, 2d ed., Secs. 833-836; 46 C. J. S., Insurance, Section 1171; 29 Am. Jur., Insurance, Secs. 1310, 1313.

While the quoted statutes do not deal with insurance proceeds as such, they are brought within contemplation by the force of public policy which is solidly established as a controlling principle, and of which our statutes bear recognition. ■■ ■ No statute is needed if an act or the assertion of a right is contrary to public policy. Rodge v. Kelly, 88 Miss. 209, 40 So. 552, 11 L. R. A., N. S., 635, 117 Am. St. Rep. 733; 12 Am. Jur., Contracts, Sec. 167.

Wherefore, the issue presented by this appeal is factual and searches whether the slaying was wilful. Compare Anderson v. Anderson, 158 Miss. 116, 139 So. 91.

On the night of this homicide, appellee had been beset by her husband and assaulted in her bedroom. A witness for the appellant, a deputy sheriff, testified that appellee explained to him that she and her husband had had a fight and that she ran from the house to the home of a neighbor, procured a gun, and, in her quoted words, ''I came back and the door was shut and I stooped down and shot him through the window.'' In the deposition of appellee, she stated that she fired the shot, adding ''We were fighting and he jumps on me after being out all night. We were fighting and he jumped on me and he pulled me out of bed. He went into the kitchen and

got a brick and told me that he would beat my brains out. I ran out to a neighbor and got my gun, then I went back and I shot at him through the window but he jumped on me again and he beat me with his fists." It will be noted that while she further stated that he had threatened to kill her, she nowhere testified that at the time the fatal shot was fired she was in imminent danger, real or apparent, of death or great bodily harm at his hands. Nor does she assert that her husband had struck her with a brick, although she volunteered the opinion that "the beating he gave me with the brick caused me to get pneumonia." A witness stated that she saw the husband beating appellee with a brick inside the house and prior to the time that he bolted the door and she left to get her weapon. In reply to an interrogatory whether "at the time of the shooting of the pistol by you, you were in fear of death or great bodily harm at the hands of" her husband, she gave assent. In answer to a cross interrogatory, she stated that "he struck me before I left the house and when I came back". This last statement is clarified somewhat by the testimony of other witnesses that after the shot was fired, he unbolted the door and came out into the yard and further assaulted his wife.

Testimony regarding the fact and outcome of a criminal prosecution against appellee based on this incident was admitted but finally excluded and properly disregarded by the chancellor. However, witnesses in the criminal trial were allowed to be quoted as to their testimony. This was irregular and such testimony, together with like inadvertences, are disregarded by us in appraising the weight of the testimony on the issue of justification by self-defense.

Certain elemental principles of criminal law, usually invoked only in common law trials, govern the right of the appellee to slay her husband. It is not enough that she be in fear and that she have been threatened. It is not controlling that she had been the victim of a

prior assault, much less that after the fatal shot she was again assaulted.

██ ██ Her own version of the affair is not assailed by other contradictory testimony. There is no escape from the conclusion that this record reveals a deliberate homicide committed when appellee was in no imminent danger, real or apparent, of death or great bodily harm. If, as she stood outside the bolted door, she had exposed herself to a resumption of hostilities, it was by her own act. She had departed not only from the zone of danger but beyond the area of res gestae, and with deliberate purpose armed herself as an aggressor.

Let it be said that she had been greatly wronged and that resentment had been compounded in an irresistible primal urge for revenge. This would explain but not excuse her act. She put aside the course of the law and took her own. A jury, sympathetic with human frailties, may by acquittal seek to justify the means by approving the achieved end. In this civil proceeding, we find ourselves in a forum where misplaced emphases may be reviewed and where civil rights may be pondered in an atmosphere undisturbed by the invisible currents which are apt to sway the judgment of those who hold in their hands the life of an accused, and who, despite high resolution, seek out bits of extenuation amid the wreckage of broken homes.

██ ██ We need not adjudge that the act was murder. It is enough that it was wilful and without justification in law. The conclusion of the learned chancellor was otherwise, and it is the opinion of the Court that such finding is manifestly wrong under this record.

The award to appellee is reversed and appellant adjudged to be the only heir and entitled to the proceeds of the policy. The cause is remanded for determination of the necessity for the appointment of an administrator of the estate of Kirby Smith, deceased, since it is not shown whether such proceeds are subject to any allowable expenses. Dobbs v. Chandler, 84 Miss. 372, 36 So. 388.

Reversed and remanded.